IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO RAILWAY SUPPLY, INC., | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. CV09-77-S-EJL |
| KAMLESHWAR UPADHYA, | ) **MEMORANDUM ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE** |
| Defendant. | ) |

Pending before this Court in the above titled matter are Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) and motion to strike. Defendant argues that this Court lacks personal jurisdiction over him and that venue is improper in Idaho, and alternatively seeks transfer of venue to California. Defendant further argues that plaintiff has failed to state a claim under which relief can be granted because the statute of limitations period has expired, and also moves to strike the affidavit of James Washburn. Plaintiff has responded to the motion asserting that both personal jurisdiction and venue are proper in Idaho, and further that the statute of limitations has not yet passed. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these motions shall be decided on the record before this Court without oral argument. Local Rule 7.1(b).

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves a contract dispute between the parties for amounts due and owing under an ongoing purchase agreement for locomotive parts. Plaintiff Idaho Railway Supplies,

1

Inc. ("IRS") is a wholesale distributor of railway parts. Its principal place of business is in Idaho. IRS is the authorized wholesaler for Dayton-Phoenix Group, Inc. ("Dayton-Phoenix"), a manufacturer of railway parts located in Ohio. Defendant Kamleshwar Upadhya ("Upadhya") is an individual residing in California. Defendant operates an import/export company, Advanced Machinery and Technology Company ("AMTC"), which buys locomotive parts for shipment to India.

Upadhya first contacted Dayton-Phoenix to purchase products from it for shipment to India. Dayton-Phoenix advised Upadhya that he would have to purchase the products through its authorized wholesaler, IRS. It appears that both parties agree that the initial contact between the two parties occurred in 1999.[1] A series of communications, negotiations, dealings, and transactions allegedly occurred between 2002-2008.

In 2002, Upadhya contacted James Washburn, the president of IRS, and requested a price quote for sixty-six radiator cooling fans. Washburn initially responded to Upadhya's request with a quote of $9,365 per cooling fan unit in a letter dated April 2, 2002. After receiving this quote, Upadhya told Washburn the price was too high and Washburn revised the quote on April 24, 2002 to $8,500 per unit. This lower price of $8,500 per unit was contingent upon IRS also receiving an order for a minimum of fifty auxiliary generators at the price of $7,250 per unit. Again, Upadhya told Washburn the quote was too high and on June 20, 2002, IRS issued a new proposal. This time, IRS quoted the cooling fans at $8,000 per unit, contingent upon an order for a minimum of fifty auxiliary generators at $8,301.80 per unit as well. Upadhya accepted this proposal on August 2, 2002.

---

[1] IRS initially disputes any contact, whether through transactions, agreements or otherwise, having ever occurred in 1999. (Mem. in Opposition of Defendant's Motion to Dismiss, p. 3). However, in its Response to Defendant's Objection and Motion to Strike, IRS states that, "it is undisputed that any negotiations between the parties in 1999 never culminated in an agreement."

Washburn confirmed Upadhya's acceptance of this quote and the conditions of the contract by sending him a fax. Washburn also received a telephone call from Upadhya, wherein he was notified that Upadhya would place the additional order for the auxiliary generators as agreed. Washburn then sent its purchase order to the manufacturer, Dayton-Phoenix for the parts. The first twenty fans were shipped to Upadhya between December 18, 2002 and December 23, 2003 [sic]. IRS invoiced Upadhya for the twenty fans at the time they were shipped and it received payment in the amount of $160,000 from Upadhya with a balance of $27,300 remaining on his account.

Twenty more fans were built and ready to be shipped to Upadhya thereafter, however Washburn advised Upadhya that he would not release the fans for shipment until the $27,300 balance for the first twenty fans was paid in full. Upadhya telephoned Washburn requesting release of the fans, but Washburn reiterated that he could not release the fans until he either received payment in full for the first twenty fans or received a letter guaranteeing payment for same. On February 21, 2003, Upadhya faxed a letter guaranteeing payment in the amount of $90,090 for sixty-six radiator fans. The letter also provided that Upadhya would alternatively purchase sixty-six auxiliary generators for $7,250 per unit within seventy-five days. Apparently satisfied with the guarantee letter, IRS released the second shipment of twenty cooling fans on February 24, 2003 and invoiced Upadhya accordingly. The last twenty-six cooling fans were subsequently released for shipment on April 2, 2003.

IRS received $160,000 on April 21, 2003 for the second shipment of the twenty fans. This amount received was deficient by $27,300. On May 1, 2003, IRS received a final payment of $208,000 from Upadhya for the last twenty-six cooling fans. According to IRS, this amount was deficient by $35,490.

IRS alleges it called Upadhya weekly for seven months attempting to collect the $90,090 balance owed on the account. IRS also alleges that in each call, Upadhya assured Washburn that he would pay the balance on his account once he sold the auxiliary generators. Eventually, Upadhya made three payments toward his $90,090 balance, the last of which was made on May 15, 2006. However, a balance of $24,900 remained on his account for the original sixty-six radiator cooling fans he ordered.

On January 27, 2004, IRS received a purchase order from Upadhya for twenty auxiliary generators and twenty-six cooling fans. Notwithstanding the outstanding balance on Upadhya's account, Washburn agreed to sell Upadhya the generators at $4,500 per unit, contingent on Upadhya guaranteeing payment of his deficiency on the original sixty-six fans. And on February 14, 2007, Upadhya placed another order with IRS for thirty-five radiator cooling fans at $11,250 per unit. On July 13, 2007, IRS released eighteen cooling fans for shipment and invoiced Upadhya for $202,500.

According to IRS, while there were other sales transpiring between the parties, Upadhya continued to be delinquent on paying the money owed on his account. IRS alleges that this arrearage caused problems for IRS with Dayton-Phoenix. And on April 1, 2008, Dayton-Phoenix put IRS on a credit hold. The credit hold allegedly froze all of IRS's other pending orders. In order to release the hold, IRS had to pay Dayton-Phoenix $197, 874. On April 22, 2008, IRS received $115,000 of the $202,500 outstanding balance on Upadhya's account for the thirty-five radiator cooling fans he ordered back in February 2007. To date, IRS alleges Upadhya owes it $111,680. IRS filed its complaint against Upadhya in state court on January 6, 2009 seeking to recover the amounts unpaid by Upadhya on various invoices. On February 26, 2009, Upadhya removed the action to federal district of Idaho.

Upadhya now brings his motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. Upadhya also moves to strike Washburn's affidavit.

## DISCUSSION

I. **Legal Standard for Motion to Dismiss Based on Lack of Personal Jurisdiction**

A plaintiff has the burden of establishing personal jurisdiction over a nonresident defendant. Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995). A plaintiff need only establish a prima facie showing of jurisdictional facts to withstand dismissal when, as here, a district court acts on a motion to dismiss without holding an evidentiary hearing. Id; See also Ballard v. Savage, 65 F.3d 1495 (9th Cir. 1995). In addressing a defendant's motion to dismiss for lack of personal jurisdiction, the court must take the plaintiff's uncontroverted allegations in its complaint as true, and resolve factual disputes in affidavits in its favor. Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). However, where a defendant offers evidence in support of its motion, a plaintiff may not simply rest on the bare allegations of its complaint. Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977). Instead, the plaintiff must present facts, by affidavit or otherwise, in response to the defendant's version of the facts. Id.

II. **Analysis of Motion to Dismiss for Lack of Personal Jurisdiction**

Personal jurisdiction over a nonresident defendant is analyzed under a two-part test. Dow Chemical Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005). The exercise of personal jurisdiction must first, satisfy the requirements of the applicable state long-arm statute, and second, must comport with federal due process. Id. When no applicable federal statute governs personal jurisdiction, as here, the law of the state in which the district court sits shall apply.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Idaho's long-arm statute, codified at Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause. Thus, the Court need look only to the Due Process Clause to determine personal jurisdiction.

The Due Process Clause requires a defendant have "certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, (1945). "To have the required minimum contacts, [a] defendant[] must have purposefully availed themselves of the privilege of conducting activities within [the forum state] thereby invoking the benefits and protections of [that state's] laws." Resnick v. Rowe, 283 F. Supp. 2d 1128, 1135 (D. Hawaii 2003) (citing Asahi Metal Indus. Co. v. Sup. Court of Cal., 480 U.S. 102, 109 (1987)). Thus, a defendant's conduct, and therefore connection, with the forum must have been such that they "should reasonably anticipate being haled into court" in that forum. Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

There are two types of personal jurisdiction: general and specific. A court may exercise general jurisdiction over a defendant when the defendant is a resident or domiciliary of the forum state, or if his contacts with the forum state are continuous, systematic, and substantial. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416 (1984). Specific jurisdiction on the other hand may be found when the cause of action arises out of a defendant's contact with or activities in the forum state. Resnick, 283 F. Supp. 2d at 1135 (citing Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991)). In this case, an analysis of specific jurisdiction is proper.

To ensure that exercise of specific jurisdiction comports with due process, the plaintiff must establish three requirements: (1) that the nonresident defendant purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct, (2) that the plaintiff's claim arise out of, or result from, the defendant's forum-related activities, and that the (3) exercise of jurisdiction is reasonable. Roth, 942 F. 2d at 620-621; Schwarzenegger, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two prongs of the test. Menken v. Emm, 503 F.3d 1050, 1057 (9th Cir. 2007). If the plaintiff succeeds in satisfying the first two prongs, the burden then shifts to the defendant to "'present a compelling case' that the exercise of jurisdiction would" be unreasonable. Schwarzenegger, 374 F.3d at 802.

**A. Purposeful Availment**

"Jurisdiction is proper when the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum state." Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957) (emphasis in original). The court must analyze "whether the defendant's contacts with [Idaho] are attributable to his own actions or are solely the actions of the plaintiff." Roth, 942 F.2d at 621. This however, does not require that the defendant "have been physically present or have had physical contact with [Idaho], so long as the defendant's efforts were 'purposefully directed' toward a[n] [Idaho] resident." Resnick, 283 F. Supp. 2d at 1136 (citing Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998)). The purpose of this is to ensure that a defendant is not haled into a jurisdiction solely because of random, fortuitous, or attenuated contacts, or of unilateral activity of the other party or a third person. Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

The Ninth Circuit distinguishes the purposeful availment requirement between tort and contract actions. In tort claims, a court applies a "purposeful direction" test. This is an effects test focusing on the forum where the defendant's actions were felt whether or not the actions themselves occurred within that forum. Schwarzenegger, 374 F.3d at 803. By contrast, contract cases applies a "purposeful availment" test, requiring a court to examine whether a defendant "'purposefully avail[ed] [him]self of the privilege of conducting activities' or 'consummate[d] [a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract" in that forum. Id.

This case involves a contract dispute and therefore the purposeful availment analysis is appropriate. A contract between a resident of the forum state and a non-resident however does not automatically establish purposeful availment. Unocal Corp., 248 F.3d at 924; Burger King, 471 U.S. at 478. A court instead must examine the circumstances surrounding the contract to determine whether the defendant purposefully established minimum contacts with the forum. To do so, the court looks to factors such as prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing. Burger King, 471 U.S. at 479.

The Supreme Court has held that "[p]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." Id. at 473 (internal quotes omitted). "Thus, if a defendant directly solicits business into the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the form state's laws." Resnick, 283 F. Supp. 2d at 1139 (quoting Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986). Furthermore, this Circuit has

held that conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections. Id.

In this case, Upadhya makes several arguments as to why Idaho does not have personal jurisdiction over him. First, Upadhya argues that Idaho cannot have personal jurisdiction over him without first having jurisdiction over his company, AMTC. Specifically, Upadhya argues that it was not him who personally conducted or transacted business in Idaho, but rather it was his company AMTC. Upadhya argues that because his alleged acts were on behalf of his company, those acts are not attributable to him as an "individual" for purposes of establishing personal jurisdiction over him in his individual capacity.[2]

An officer or director of a business may nonetheless be subject to personal jurisdiction if that individual is a "primary participant" in the alleged wrongdoing. Winery v. Graham, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007) (citing Calder v. Jones, 465 U.S. 783, 790 (1984)). Personal jurisdiction based on the primary participant theory is appropriate if the individual had "control of, and direct participation in the alleged activities." Id. (citing Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985)).

Upadhya cannot avoid jurisdiction merely because a corporation acts as the alter ego of an individual defendant, or where there is an identity of interest between the corporation and the individuals. Id. at n.3 (citing Davis v. Metro Prods. Inc., 885 F.2d 515, 520-21 (9th Cir. 1989) (holding that "the corporate form may be ignored in cases in which the corporation is the agent or alter ego of the individual defendant")). Moreover, Upadhya had control of and direct participation in the alleged activities with IRS. Upadhya is the sole owner of the corporation

---

[2] Defendant alleges that its company, AMTC is a limited liability partnership protected by Idaho Code § 53-2-404 from liability. Defendant has also notified the court that it anticipates plaintiff will amend its complaint to name AMTC as a defendant, because AMTC is not presently a party in this action, the issue is not ripe for review and the Court declines to address it.

AMTC, and was the only individual communicating with IRS. Furthermore, as the only individual operating the company, Upadhya is not only the only the primary participant, but he is the only *possible* participant as well. The Court is not persuaded by Upadhya's argument to the contrary.

Next, Upadhya argues that this Court lacks personal jurisdiction over him because he is a California resident, has never set foot in Idaho, has no connection with Idaho other than sending letters back and forth to IRS, and because the parties agreed that California law would be the parties' choice of forum. It is true in some cases the Ninth Circuit has found personal jurisdiction is lacking over a party whose only contacts with the forum were telephone calls and a letters directed into the state. Peterson v. Kennedy, 771 F.2d 1241, 1261 (9th Cir. 1985). The court in Peterson stated that the "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." Peterson, 771 F.2d at 1262 (quoting Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica, 614 F.2d 1247, 1254 (9th Cir.1980)). This case however, dealt with a one shot deal. Id. Moreover, this Circuit has also recognized and held that "many transactions take place solely by mail or wire across state lines, obviating the need for physical presence . . . [and that] the physical absence of [a] defendant" cannot defeat the exercise of personal jurisdiction. Roth, 942 F.2d at 622 (citations omitted).

Here, the Court finds that the defendant purposefully directed his actions toward the forum state, and therefore, invoked the benefits and protections of Idaho's laws. Upadhya made the initial contact with IRS, an Idaho corporation, back in 1999. Thereafter, for roughly six years between 2002-2008, the parties dealt with one another in the buying and selling of railway parts. All of the defendant's purchase orders were sent by mail or fax to IRS. And unlike Peterson, in

this case it was not an instance where the contract or contact between the parties consisted of a one shot deal. Rather, the parties had a continuing and extensive involvement with one another, and likewise had a continuing and extensive involvement with the forum.

With regard to Upadhya's argument that the parties contractually established California as their forum of choice for all disputes pursuant to alleged negotiations between the parties in 1999, this district has previously held that "choice of law provision[s,] standing alone[, are] insufficient to confer jurisdiction . . ." Moxie Java Int'l, LLC v. Cornocopia Beverages, Inc., 2009 WL 187893 at *5 (D. Idaho Jan. 23, 2009) (quoting Burger King, 471 U.S. at 482). Based on the facts with this case, the Court finds personal jurisdiction to be proper with Idaho.

**B. Arising out of Forum-Related Activities**

Personal jurisdiction may be exercised over a defendant if the cause of action arises out of the particular purposeful contact of the defendant with the forum state. Menken, 503 F.3d at 1060 (citing Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1210 (9th Cir. 2006)). To determine whether a plaintiff's claims "arise out of" a defendant's forum-related activities, the Ninth Circuit adopted a "but for" analysis. See Ballard, 65 F.3d at 1500 (citing Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585 (1991)). Thus, specific personal jurisdiction is proper only where "but for" defendant's activities in Idaho, plaintiff's injuries would not have occurred.

In this case, but for Upadhya contacting IRS, submitting purchase orders for railway parts, and accepting the unit sale prices quoted by IRS, IRS would not have been involved in the actions giving rise to the claims in this case. Upadhya purposefully availed himself to the privileges of conducting business in Idaho by contracting with IRS from 2002 until 2008. IRS alleges that Upadhya breached the terms of the contract between the parties by failing to pay the

amounts due and owing under it. As such, IRS's cause of action arises from Upadhya's purposeful contact with Idaho. See e.g., Hirsch v. Blue Cross, Blue Shield of Kan. City, 800 F.2d 1474, 1480-81 (9th Cir. 1986) (holding that a contract constituted defendant's contacts with the forum state for purposes of relatedness element of the limited jurisdiction test). Accordingly, the second prong of the specific jurisdiction test is satisfied.

### C. Reasonableness of Exercise of Jurisdiction

Because the first two prongs of the test for specific jurisdiction are satisfied, the burden shifts to Upadhya "to 'present a compelling case' that the exercise of jurisdiction" would be unreasonable. Menken, 503 F.3d at 1060 (quoting Schwarzenegger, 374 F.3d at 802). To determine the reasonableness of exercising jurisdiction over a defendant, the court considers the following factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Id. (quoting CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004)).

It is well established that in determining personal jurisdiction the court must focus primarily on "the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). The "relationship among the defendant, the forum, and the litigation" is that IRS is and always has been operating its business Idaho, was contacted by Upadhya in Idaho, and the contract in dispute arose out of negotiations between an Idaho plaintiff and a Californian defendant.

As to the first factor, some cases in the Ninth Circuit "have suggested that once the minimum contacts threshold is met the degree of intrusion into the forum becomes irrelevant." Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993) (citing Corp. Inv. Bus. Brokers v. Melcher, 824 F.2d 786, 787 (9th Cir. 1987)). Nonetheless, other cases provide that "[e]ven if there is sufficient 'interjection' into the state to satisfy the [purposeful availment prong], the degree of interjection is a factor to be weighed in assessing the overall reasonableness." Core-Vent Corp., 11 F.3d at 1488 (quoting Ins. Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1271 (9th Cir.1981)) (alterations in original).

In this case, Upadhya's contacts with the state of Idaho appear limited to the negotiations, purchase orders, and isolated communications with IRS regarding payment for locomotive materials under the contract. Nonetheless, this factor does not weigh heavily in Upadhya's favor since his contacts "were sufficient to meet the purposeful availment prong." Core-Vent Corp., 11 F.3d at 1488.

Upadhya argues that exercising jurisdiction over him would offend due process. In support of this argument, Upadhya argues that the only reason he had contact with Idaho was because the manufacturer, Dayton-Phoenix, directed him to submit his orders through IRS. However, the Court finds the defendant could have reasonably foreseen being haled into Idaho's courts *because* he sent contracts and purchase orders to Idaho, made phone calls to Idaho, and knew IRS is an Idaho company. Moreover, the Court finds that Upadhya should have reasonably known that his actions could have an effect on the plaintiff, and that the brunt of the injury caused by his failure to pay would be felt in Idaho.

And although Upadhya is a California resident, which the Court recognizes puts a burden on him by litigating this case in Idaho, because of "the advances in transportation and

telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past." Menken, 503 F.3d at 1062 (quoting CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004)). Indeed, this Circuit has found that even where a defendant must travel from a foreign country, such a "factor is not dispositive" as to the reasonableness of exercising personal jurisdiction. Watts, 303 F.3d at 1115 (citing Sinatra v. Nat'l Enquirer, 854 F.2d 1191, 1199 (9th Cir. 1988)). Therefore, although this factor weighs in Upadhya's favor, the Court does not find it to weigh heavily.

As to the third factor, there has been no showing of any conflict with the sovereignty of defendant's home state, California. This factor therefore presents no barrier to litigation in Idaho and thus weighs slightly in plaintiff's favor. See e.g. Resnick, 283 F.Supp.2d at 1141 (stating that no demonstration of any actual conflict with the defendant's home state presents no barrier to litigating in the forum state and weighs in favor of the plaintiff).

As to the fourth factor, Upadhya argues that Idaho has no interest in adjudicating this dispute and further seeks, as an alternative, for transfer of venue to California. However, even in a "simple breach of contract claim . . . Idaho has a strong interest in providing effective redress for its corporate residents." Wachovia Trust Co. v. Amin, No. 04-625, 2005 WL 1593648, at *6 (D. Idaho July 7, 2005). Thus, this factor weighs in favor of this Court exercising personal jurisdiction over Upadhya.

As to the fifth factor, efficient judicial resolution of the controversy generally focuses on the location of the evidence and witnesses. Resnick, 283 F. Supp. 2d at 1142 (citations omitted). However, this factor "is no longer weighed heavily given the modern advances in communication and transportation." Id. Moreover, given that witnesses and evidence are located in Idaho, California, Ohio, this factor is neutral.

As to the sixth factor, the Court is not convinced that another forum would be more convenient or effective of relief to IRS. Idaho is convenient and would provide effective relief as the forum of choice given the fact that Upadhya initially contacted IRS, and that without Upadhya's initial contact, IRS may not have been injured.

Lastly, as to the seventh factor, although Upadhya argues that California should serve as the alternative forum and the forum of choice between the parties, the Court notes that California has implicitly denied jurisdiction over IRS. In fact, Upadhya filed a parallel lawsuit in California.[3] California dismissed the complaint, however, finding that it lacked personal jurisdiction over IRS and Washburn. The Court finds that IRS has demonstrated the unavailability of an alternative forum through the California dismissal, and further finds that this factor weighs in favor of IRS.

Ultimately, although a few of the foregoing factors marginally favor Upadhya, the more compelling factor favors IRS, the others are either neutral or slightly in IRS's favor. The Court therefore concludes that Upadhya has not presented a "compelling case" such that the exercise of personal jurisdiction over it would be unreasonable. Accordingly, the Court hereby denies Upadhya's motion to dismiss for lack of personal jurisdiction, and alternatively for transfer of venue to California.

I.      Motion to Dismiss for Alleged Failure to State a Claim

Defendant also argues that this case should be dismissed because the applicable statute of limitations period has expired and therefore the plaintiff fails to state a claim under which relief can be granted. Plaintiff counters that the first transaction occurred in 2002 and that the last

---

[3] Advanced Machinery and Technology Company, LLP v. Idaho Railway Supply and Jim Washburn, CV 09-05066 RSWL (U.S. District Court for the Central District of California).

payment, made on May 15, 2006, would be the first date that the statute of limitations would begin to run.

"A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief." Embury v. King, 191 F. Supp. 2d 1071, 1076 (N.D. Cal. 2001) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In addition, "[a]ll material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. Id. (citing NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

"A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1207 (9th Cir. 1995) (quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)). See also Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1169 (E.D. Cal. 2005) (holding that only where the facts and dates alleged in a complaint clearly demonstrate that the complaint is barred by the statute of limitations, should a motion to dismiss be granted). Thus, a complaint cannot be dismissed *unless* it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. Id. (citing Conley, 355 U.S. at 41).

In this case, it does not appear beyond doubt that IRS can prove no set of facts that would establish the timeliness of its claim. Therefore, Upadhya's motion to dismiss on the statute of limitations theory is denied.

**ORDER**

Based on the foregoing, and having been fully advised in the premises, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss, or Alternatively to Transfer Venue (Docket No. 20) is **DENIED**. IT IS FURTHER ORDERED that Defendant's Motion to Strike (Docket No. 24) is **DENIED**.

DATED: **March 17, 2010**

_____
Honorable Edward J. Lodge
U. S. District Judge